IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02809-KLM

ANGELINA JASMINE JAHNKE,

    Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

    Defendant.

_____

## ORDER
_____

### ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX

This matter is before the Court[1] on review of the Commissioner's decision denying Plaintiff's claim for Supplemental Security Income Benefits ("SSI") pursuant to Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 401, *et seq.* The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).

The Court has reviewed Plaintiff's Opening Brief [#12][2]; Defendant's Response Brief [#16] ("Response"), Plaintiff's Rely Brief [#17] ("Reply"), the Social Security Administrative Record [#10] ("Tr."), and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the decision of the Commissioner is **REVERSED** and **REMANDED** for further fact finding.

---

[1] The parties consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See* [#11].

[2] "[#12]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

## I. Background

Plaintiff was born on October 7, 1996, and was 19 years old when she filed her application for Supplemental Security Income. Tr. 24. Plaintiff has a limited education and has no past relevant work. *Id.* The Opening Brief [#12] indicates that Plaintiff has never been able to work at the level of substantial gainful employment, and that Plaintiff has had severe mental health and developmental issues her entire life. *Id.* at 1.

Plaintiff filed a claim for SSI on October 20, 2016. Tr. 24. Plaintiff alleged disability beginning March 1, 2013, due to a number of mental impairments, borderline to low intellectual functioning, social and academic issues, and other impairments. *Id.* 24, 253-55.

Plaintiff's application was denied, Tr. 81-84, and a hearing was held on September 6, 2018 before Administrative Law Judge ("ALJ") Jennifer Fellabaum. *Id.* 30-60. The ALJ denied Plaintiff's claim for benefits in a decision dated December 19, 2018. *Id.* 12-29.

In the sequential evaluation process required by law, the ALJ found that Plaintiff engaged in substantial gainful activity during the period from July to September 2016. Tr. 17. However, the ALJ found there was a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity, and the ALJ's remaining findings focused on that period. *Id.*

At step two, the ALJ found Plaintiff had the severe impairments: "depression; anxiety; post-traumatic stress disorder (PTSD); bipolar disorder; disassociative disorder; reactive attachment disorder; borderline personality traits; learning disorder; and borderline intellectual functioning." *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairments. *Id.* 18.

As to residual functional capacity ("RFC"), the ALJ found that Plaintiff has the capacity "to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can never climb ladders, ropes, or scaffolds, she should not be exposed to unprotected heights or heavy machinery, and she should avoid concentrated exposure to environmental irritants." Tr. 20. Additionally, the ALJ stated that Plaintiff "is limited to simple, routine tasks with no fast-paced production requirements[,]" and "can tolerate occasional changes to the work setting and occasional interactions with co-workers, supervisors, and the general public." *Id.*

At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 25. At step five, the ALJ found considering Plaintiff's age, education, work experience, and RFC that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id.* 24. This included representative occupations such as Cleaner, Kitchen Helper, and Sandwich Maker. *Id.* 24-25. Plaintiff's claim for benefits was therefore denied. *Id.* 25.

The Appeals Council declined Plaintiff's request for review. Tr. 1-7. Thus, the ALJ's decision became final for purposes of judicial review.

## II. Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B)).  Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009).  The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings.  42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).  The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."  *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).  Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

"Evidence is not substantial if it is overwhelmed by other evidence or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  In other

words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

A court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. However, it "may not reweigh the evidence nor substitute [its] judgment" for the Commissioner's. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice. . . ." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

### III. Analysis

Plaintiff argues that her intellectual disability rises to a listing level impairment under Listing 12.05B. *Brief* [#10] at 2, 4. According to Plaintiff, the administrative record contained contradicting medical evidence about the level of Plaintiff's IQ relevant to the Listing and how that impairment affects her in ability to perform work related activities. *Id*. Counsel thus requested that the ALJ order that an additional consultative examination ("CE") be performed to provide an updated IQ determination as well as information on Plaintiff's intellectual limitations in each of the areas of functioning. *Id*. Plaintiff asserts that the ALJ ordered the examination but issued her decision without awaiting the results of the

exam. *Id.* Accordingly, it is argued that the ALJ failed to properly and fully develop the record. *Id.* It is further argued that the ALJ incorrectly assessed Plaintiff's work history and that the RFC is not based on substantial evidence. *Id.* The Court now turns to those arguments.

**A.     Failure to Develop the Record**

The ALJ has a duty to fully and fairly develop the record as to material issues. *Baca v. Dept. of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993)). "Put another way, when the ALJ considers an issue that is apparent from the record, he has a duty of inquiry and factual development with respect to that issue." *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) (citing *Grogan*, 399 F.3d at 1263-64). This is consistent with the fact that a social security hearing is "nonadversarial in nature, and thus the ALJ bears responsibility for ensuring that 'an adequate record is developed during the disability hearing consistent with the issues raised' in that hearing." *Grogan*, 399 F.3d at 1264 (citation omitted).

Here, as in *Grogan*, the ALJ addressed an issue that was raised by Plaintiff's counsel. This issue was counsel's request for a CE to include full scale IQ testing, which was raised both in a Pre-Hearing Memorandum and Request for Consultative Examination (Tr. 331-33) and at the hearing (*id.* at 35-36.) The ALJ acknowledged the request for a CE and stated that it "might be useful" as "[a]t a minimum, it might give use a second date point in time from the August 2016 CE." *Id.* at 36. The ALJ further stated:

> And we also—you know, I may request a doctor from DDS to make a determination about these IQ tests because we, obviously have the one from 2010 that says full-scale IQ of 83, but then we have another one from August 2012 that noted 64, although that one also notes that there was a problem

>     with sedation during that. So what I would recommend is let's go ahead and
>     – so long as you feel comfortable, we can move forward with the hearing
>     today and take the testimony. And then I can order a psych CE so we can get
>     a second data point, and then we can get the records from St. Mary-Corwin.

*Id.* At the conclusion of the hearing, the ALJ stated that there was a possibility that after the psychological CE was conducted, she might want to talk to Plaintiff again and have a supplemental hearing  *Id.* at 59.   As Plaintiff notes, the issue of her IQ is particularly important in this case because she has not had full-scale IQ testing as an adult, and the ALJ noted that the IQ tests administered while she was a juvenile conflict (one resulted in a score below the listing level of 70).  *Opening Brief* [#12] at 4, 5.  This contradiction was not solved by any other evidence in the file.  *Id.* at 5.[3]

Consistent with the ALJ's statements at the hearing, a consultative examination was scheduled for Plaintiff for September 25, 2018.  *See Opening Brief* [#12] at 6.  Plaintiff states that she was, however, unable to attend because of a  conflicting need to take her child in for medical care on the same date.  *Id.*  Plaintiff was unsure how to go about rescheduling the appointment on her own, which the Opening Brief [#12] explains may have been due to her intellectual impairment.  *Id.*  In any event, when the doctor was unable to reach Plaintiff to reschedule the appointment, the OHO[4] was notified.  Tr. 345.

---

[3] While the physician who assessed the full-scale IQ score of 64, Dr. Patterson, said that this score might be affected by Plaintiff's level of sedation during the examination, he did not provide any other score.  Tr. 363.  Moreover, his statement that she "likely falls in the low average to borderline range (if she were not sedated)" was an estimate.  *Id.*  And he recognized that going forward, "[s]ome cognitive compromising secondary to the medications may be an unavoidable aspect of neuroleptic treatment." *Id.* 364. Dr. Patterson's opinion is discussed in more detail below in Section III.B.

[4] While it is not clear from the record, the Court assumes that the OHO refers to the Office of Hearings Operations.  *See https://www.ssa.gov/appeals/ho_locator.html.*

On November 26, 2018, the OHO contacted Plaintiff's counsel to inquire regarding good cause for missing the appointment. *Id.* 345. Counsel responded with a Statement of Good Cause explaining why Plaintiff had missed the September 25th appointment and requested that the CE be rescheduled. *Id.* 347. Despite counsel's request in that Statement that the CE be rescheduled and Plaintiff's willingness to participate, the ALJ issued her decision without any consideration of the issue. The ALJ thus did not address the fact that she had ordered a CE or why the decision was being issued without the CE being rescheduled. The Court finds that the ALJ erred in doing so.

While an ALJ may make a determination without an ordered CE "if a claimant, without good reason, fails or refuses to participate in" the evaluation, *Salazar v. Barnhart*, 344 F. Supp. 2d 723, 738 (D.N.M. 2004) (citing 20 C.F.R. §§ 404.1518, 416.918), that is not the situation here. Plaintiff's counsel demonstrated good cause for Plaintiff's failure to participate in the CE. *See* 20 C.F.R. § 404.1518 (stating as examples of good reasons for failure to appear for a scheduled examination an "Illness on the date of the scheduled examination or test;" or "having had death or serious illness occur in your immediate family"). The Commissioner has not disputed that Plaintiff demonstrated good cause within the meaning of the regulations.

The Commissioner argues, however, that the agency is required to develop the record only if "after considering the evidence we determine we cannot reach a conclusion about whether you are disabled." *Response* [#16] at 9 (citing 20 C.F.R. § 416.920b(b)(2)). The ALJ sent Plaintiff to one psychological CE (Tr. 450), and the Commissioner asserts that Plaintiff's argument that the ALJ erred because she did not order a second psychological CE lacks merit because the evidence was not inconsistent nor insufficient.

-8-

*Id.* The Court rejects this argument as an improper post hoc rationale. *See Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).

The issue here is not whether the ALJ was required to order another CE; the ALJ *did* order that the CE occur, finding it would be useful. The Commissioner has not disputed that the first psychological CE conducted by Dr. Benson did not include a full-scale IQ analysis (*see* Tr. 450-56), and the ALJ noted that there was conflicting evidence as to Plaintiff's IQ testing. *Id.* 36. Accordingly, the ALJ had a duty to ensure that the record was developed as to the CE that she ordered. The ALJ erred in not allowing the CE to be rescheduled or, if she found a failure to show good cause for Plaintiff missing the CE, to address this issue in her decision. In short, once the ALJ chose to order a second CE and develop the record on an issue presented to her, the ALJ could not then issue a decision without consideration of that issue. Based on the foregoing, the Court finds that this case must be remanded so that the record can adequately be developed in regard to the second CE that was ordered by the ALJ.

**B.     The Medical Evidence and Plaintiff's RFC**

The Court also find errors with the RFC and the medical evidence that should be addressed on remand. The record undisputedly documents cognitive impairments, and the ALJ found that Plaintiff has borderline intellectual functioning. Tr. 17. However, the ALJ did not appear to address the cognitive impairments in the RFC. As to that issue, the Court finds that the ALJ erred in not considering Dr. Bradley Patterson's opinion. Dr. Patterson noted that Plaintiff has a long history of severe abuse and neglect and behavior problems, and diagnosed Plaintiff with a cognitive disorder NOS, major depression, posttraumatic stress disorder, reactive attachment disorder, conduct disorder and borderline to low

average intellectual functioning. Tr. 359-365. He opined that Plaintiff is "likely to function best in a somewhat simplified, supportive, routine environment without a lot of distractions or interpersonal stressors. Some extension upon the time constraints of work performance are likely to be required." Tr. 364. Dr. Patterson also recommended that Plaintiff "avoid divided attention type tasks or cognitive multitasking circumstances, and that "reliance on written or other external memory aids may be useful." Tr. 364. He concluded that "[g]iven the chronicity and severity of the problems, the prognosis accordingly may be somewhat guarded." *Id.*

The ALJ is required to consider all evidence in the record when she makes a determination or decision whether the claimant is disabled, and must discuss "'the significantly probative evidence [sh]e rejects.'" *Carpenter*, 537 F.3d at 1266 (quoting *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996)). The ALJ must also discuss the weight she assigns to such opinions. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).[5] "'[A]ll relevant evidence must be considered so the ALJ can obtain a longitudinal picture of [the claimant's] overall degree of functional limitation.'" *Quintana v. Colvin*, No. 14-cv-03286-CMA, 2015 WL 3956363, at *5 (D. Colo. June 29, 2015) (quoting 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1)). This includes consideration of medical opinions that pre-date the relevant time period. *Hamlin v. Barnhart*, 365 F.3d 1208, 1222 n. 15 (10th Cir. 2004); *see also Lackey v. Barnhart*, 127 F. App'x 455, 458 (10th Cir. April 5, 2005) (rejecting the Commissioner's argument that a doctor's opinion was irrelevant to the period

---

[5] The Court notes that Plaintiff's application, filed in October 2016, was filed before the regulations changed in March 2017, and those regulations do not apply to this case. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)).

under review because it pre-dated that period, stating "[n]o relevant authority is cited for the proposition that medical reports prior to the operative onset date are categorically irrelevant and, indeed, our precedent is to the contrary.")  In fact, the Tenth Circuit has held that when "a doctor reports that an impairment is permanent, the fact that the report precedes the designated disability period is of limited practical import."  *Lackey*, 127 F. App'x at 458.

Dr. Patterson's report provides works restrictions that address Plaintiff's cognitive impairments based on his diagnosis of a cognitive disability and borderline to low intellectual functioning.  The report also contributes to or supports the overall picture of why a second consultative examination was necessary as Dr. Patterson, following a thorough examination, opined as to limited intellectual abilities.  Moreover, as Plaintiff notes, Dr. Patterson's report was relevant to the requirement of Listing 12.05 that a claimant provide "evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22."  *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05(B)(3).

Here, while the ALJ referenced the medical opinions before the period at issue in passing, including that of Dr. Patterson, and noted Dr. Patterson's finding that Plaintiff "appeared heavily sedated" during his testing of her  (Tr. 18, 21), she did not discuss what weight she gave Dr. Patterson's opinion or his findings that could impact the RFC.  This error was particularly significant given that when Plaintiff's counsel included Dr. Patterson's work restrictions in the hypothetical question, the vocational expert testified that this could impact Plaintiff's ability to perform the jobs the expert had found that Plaintiff could perform.  Tr. 55-56.  Testimony elicited by hypothetical questions that do not relate with precision all

of a claimant's impairments cannot constitute substantial evidence to support the Commissioner's decision. *Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993). Additionally, when an ALJ does not provide an explanation for rejecting medical evidence, the court cannot meaningfully review the ALJ's determination. *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001).

While the Commissioner argues that Plaintiff's functioning improved after Dr. Patterson authored his report, this is another post hoc rationale that does not excuse the ALJ's failure to consider Dr. Patterson's opinion. Dr. Patterson conducted a comprehensive neuropsychological examination of Plaintiff, unlike nonexamining consultants Dr. Suyeshi and Dr. Frommelt whose opinions the ALJ gave great weight to. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (stating that the opinion of an agency physician or psychologist who has never seen the claimant is generally entitled to the least weight). The ALJ thus erred in not properly considering and weighing Dr. Patterson's opinion, and a remand is also required on this basis.

Additionally, the Court notes that the ALJ did not include in the RFC or the hypothetical question impairments that the ALJ found existed in assessing Plaintiff's mental impairments at step three. Thus, the ALJ found that Plaintiff is moderately limited in her ability to understand, remember, or apply information as well as in concentrating. Tr. 19. Yet there were no findings in the RFC that addressed these limitations, and the hypothetical question to the vocational expert also did not include any such limitations. Tr. 20. The Tenth Circuit has made clear that the existence of a moderate impairment is not the same as no impairment at all. *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007). The finding of a moderate impairment "'supports the conclusion that the individual's capacity to perform

the activity is impaired,' POMS DI 24510.063 B.2. (boldface omitted), and therefore must be related with sufficient precision in a dispositive hypothetical to a VE and in an RFC finding." *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014); *see also Bowers v. Astrue*, 271 F. App'x 731, 733-34 (10th Cir. 2008). While the ALJ limited Plaintiff to "simple, routine tasks with no fast-paced production requirements[,]" this does not adequately the moderate limitations that the ALJ found. *See Jaramillo*, 576 F. App'x at 876 (finding an RFC limitation to "simple, routine, repetitive, and unskilled tasks" does not adequately account for moderate limitations in carrying out instructions, attending and concentrating, and working without supervision). This must also be addressed on remand.

## C.     Plaintiff's Work History

Finally, the Commissioner acknowledges that the ALJ erred in finding that Plaintiff had engaged in substantial gainful activity from July 2016 to September 2016. *Response* [#16] at 13. Thus, it is undisputed that Plaintiff has never engaged in substantial gainful activity. While the ALJ's error may have been harmless if this were the only error given the ALJ's finding that Plaintiff had no past relevant work, this error should be rectified on remand in connection with the ALJ's reassessment of whether Plaintiff is disabled.

## IV.  Conclusion

For the reasons set forth above,

IT IS HEREBY **ORDERED** that this case is **REVERSED AND REMANDED** to the Commissioner for further proceedings consistent with this Order pursuant to sentence four in 42 U.S.C. § 405(g).

Case 1:19-cv-02809-KLM   Document 19   Filed 03/01/21   USDC Colorado   Page 14 of 14

IT IS FURTHER **ORDERED** that Plaintiff is **AWARDED** her costs, to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C. § 2412(a)(1).  See *Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1153 (D. Colo. 2015).

IT IS FURTHER **ORDERED** that the Clerk of Court shall **enter** judgment in favor of Plaintiff and **close** this case.

Dated:  March 1, 2021

BY THE COURT:

*[signature]*

Kristen L. Mix
United States Magistrate Judge
-14-